WILLIAM JAMES STEELE,      :
(AIS # 126537)

                               :

      **Plaintiff,**

                               :   **CIVIL ACTION 13-00399-WS-N**

vs.

                               :

**FRANK WATTS,**

                               :

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72(a)(2)(R), and is now before the Court on Defendant's motion for summary judgment (Docs. 24, 25, 27). For the reasons stated below, it is recommended that summary judgment be granted in favor of Defendant Frank Watts, and the claims presented by Plaintiff William James Steele be dismissed with prejudice.

## I.    Summary of Allegations.

Following a robbery conviction in May of 2013, Plaintiff Steele was arrested and booked into the Marengo County, Alabama Detention Center ("Marengo Jail") on June 5, 2013,[1] and he was subsequently transferred to

---

[1]    Given that Steele was a convicted inmate at the time he was arrested and booked into Marengo Jail on June 5, 2013, his claims will be analyzed under the Eighth Amendment as a convicted inmate; however, "the standard for providing

Limestone Correctional Facility on June 18, 2013. (Doc. 27-1 at 3). This complaint arises from Steele's incarceration at the Marengo Jail. In his brief complaint,[2] Steele alleges that on June 16, 2013, he was housed in a cell without running water, and despite suffering from the human immunodeficiency virus (HIV), he was denied medical treatment. (Doc. 7 at 5-6). Steele is suing the Administrator of the Marengo Jail, Frank Watts,[3] for

---

basic human needs to those incarcerated or in detention is the same under [the Fourteenth Amendment, for pretrial detainees or the Eighth Amendment, for convicted prisoners]." <u>Evans v. St. Lucie Cnty. Jail</u>, 448 F. App'x 971, 973 (11th Cir. 2011).

[2]    Steele's original complaint was docketed by this Court on August 5, 2013 (Doc. 1), but has been superseded by his Amended Complaint (Doc. 7) which was filed pursuant to the Court's August 6 and 26, 2013 orders (Docs. 3, 6) directing Plaintiff to file his complaint on the proper form for actions brought under 42 U.S.C. § 1983.

[3]    In his initial complaint, Steele named Frank Watts and Sheriff Ben Bates as defendants in this action. (Doc. 1). However, in Plaintiff's superseding Amended Complaint, Sheriff Bill Mack was substituted for Sheriff Ben Bates as being responsible for the care of inmates and actions of employees at the Marengo Jail. (Doc. 7 at 5). However, prior to service of the complaint on Sheriff Bill Mack, Steele voluntarily dismissed Sheriff Mack from this action after acknowledging, "that Bill Mack was in fact the wrong Defendant." (Docs. 38, 39, 40). To date, Frank Watts is the sole defendant in this action and is the only party to have been served with the complaint and to have appeared in the suit. (Docs. 24, 25, 27).

The record does indicate that Steele sought to add a defendant, Correctional Officer Smith, to this action with the filing of his "Motion in Response to Magistrate Order or In the Alternative Leave to Amend Defendant's [sic]." (Doc. 40). This motion consisted of a one sentence paragraph, which stated:

> Plaintiff agrees with the Honorable Court that Bill Mac was in fact the wrong Defendant, the added Defendant Correction Officer Smith, because he was one of the Defendant[s] who personally handled my request slip trying to seek medical attention, also I would like to be continued as a Defendant Frank Watts.

(<u>Id</u>. at 1). Correctional Officer Smith, however, was never served with this action nor added as a defendant to this action due to Steele's failure to sufficiently plead facts connecting a claim to Smith.

While "*pro se* pleadings are held to a less strict standard than pleadings filed

these alleged Eighth Amendment violations and seeks monetary relief in the amount of $700,000.00. (Doc. 7 at 7).

Defendant Watts has answered the complaint and filed a special report (Docs. 24, 25, 27), which the Court has converted into a motion for summary judgment (Doc. 57), and after a thorough review of the record, the Court finds the motion is ripe for consideration.

## II.    Standard of Review.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson v. Liberty

---

by lawyers and thus are construed liberally," <u>Alba v. Montford</u>, 517 F.3d 1252 (11th Cir. 2008), "a complaint [will not] suffice if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Liability under § 1983 requires a causal link between the alleged constitutional violations and direct conduct of the defendant. <u>Connick v. Thompson</u>, 563 U.S. 51, 60-61, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011); <u>Rizzo v. Goode</u>, 423 U.S. 362, 370-71, 375-77, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976). Thus, Steele must allege sufficient facts showing a medical need put him at "a substantial risk of serious harm," that Correctional Officer Smith was subjectively deliberately indifferent to that risk, and causation. See <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-34, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); <u>see also</u> 28 U.S.C. § 1915(e)(2)(B)(ii) (discussing the dismissal of a claim which lacks basis in law or fact). Plaintiff Steele fails to carry this burden, as he provides no facts or details related to any submitted form requesting medical attention during his June 5-18, 2013 incarceration, including what medical need he suffered, what treatment was sought, the time or date(s) he sought medical attention, or how long the need persisted. As such, any potential claims against Correctional Officer Smith are due to be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). See <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (To avoid dismissal for failure to state a claim, plaintiff much plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 557, 127 S. Ct. 1955, 1966, 167 L.Ed.2d 929 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w]' that the pleader is entitled to relief.'").

Lobby, Inc., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); see also Allen v. Bd. of Pub. Educ. for Bibb Cnty., 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, the "responsibility then devolves upon the non-movant to show the existence of a genuine issue . . . [of] material fact." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993); see also Allen, supra, at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and show by its own affidavits, or by "depositions, answers to interrogatories, and

admissions on file," designate specific facts showing that there is a genuine issue for trial.'") internal citations omitted); <u>see</u> <u>Comer v. City of Palm Bay, Fla.</u>, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, 'depositions, answers to interrogatories, and admissions on file.'") (internal quotations and citations omitted).

> Forbidding reliance upon pleadings precludes a party from "choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion." . . . This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" . . . Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

<u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 592 (11th Cir.), *cert. denied sub nom*. <u>Jones v. Resolution Trust Corp.</u>, 516 U.S. 817, 116 S. Ct. 74, 133 L.Ed.2d 33 (1995); <u>see also</u> <u>LaChance v. Duffy's Draft House, Inc.</u>, 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party."). In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); <u>see</u> <u>Comer</u>,

*supra*, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

In considering whether Watts is entitled to summary judgment in this action, the undersigned has viewed the facts in the light most favorable to Plaintiff Steele. Comer, *supra*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

Garczynski, *supra*, 573 F.3d at 1165 (internal citations omitted). In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." Resolution Trust Corp., *supra*, 43 F.3d at 599.

## III. Analysis.

### A. Defendant's Immunity.

#### 1. Sovereign Immunity.

Plaintiff Steele alleges violations of the Eighth Amendment of the United States Constitution against Mr. Frank Watts pursuant to 42 U.S.C. § 1983 for his alleged failure to provide adequate medical care and sanitary

conditions at the Marengo Jail. (Doc. 7 at 5). Defendant has asserted the affirmative defense of sovereign immunity for the allegations against him in his official capacity.

The Eleventh Amendment protects Defendant in his official capacity from Steele's claims. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (With some exceptions, "a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment. This jurisdictional bar applies regardless of the nature of the relief sought." (citations omitted)); Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) ("[S]tate officials sued in their official capacity are []protected by the [Eleventh A]mendment." (citing Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985))). In addition, "a state agency[] and a state official sued in his official capacity are not 'persons' within the meaning of § 1983, thus damages are unavailable..." Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1524 (11th Cir. 1995) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)). A sheriff and, by extension, his staff are considered departments of the state and are entitled to Eleventh Amendment immunity. Given that Watts nor the state of Alabama has waived its Eleventh Amendment immunity, see Pennhurst State Sch. & Hosp., 465 U.S. at 100; Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990), Steele may not sue Defendant Watts in his official

capacity.

## 2.     Qualified Immunity.

Watts, however, is not absolutely immune from suit in his individual capacity, but is protected by qualified immunity, and Watts has raised such a defense.   (Doc. 24 at 1).   Qualified immunity protects government officials from liability for civil damages unless they violate a statutory or constitutional right that was clearly established at the time the alleged violation took place. See Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009); Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1184 (11th Cir. 2009). "The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit 'all but the plainly incompetent or one who is knowingly violating the federal law.'" Lee[ v. Ferraro], 284 F.3d [1188,] 1194 [(11th Cir. 2002) ](citation omitted) (quoting Willingham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir. 2001)). Qualified immunity is a defense not only from liability, but also from suit. See Id.

> "Under the well-defined qualified immunity framework, a 'public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012) (quoting Lee, 284 F.3d at 1194). Once the official has done so, the burden shifts to the plaintiff to satisfy the following two-pronged inquiry: (1) whether the facts that a plaintiff has shown make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. Pearson, 555 U.S. at 232, 129 S.

> Ct. 808...The Supreme Court recently has made it clear that [courts] need not employ a rigid two-step procedure, but rather may exercise [their] discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 236, 129 S. Ct. 808.

Gilmore v. Hodges, 738 F.3d 266, 272-73 (11th Cir. 2013). "Under controlling law, the plaintiff[] must carry [his] burden by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or [the highest court of the state from which the case arose]." Terrell v. Smith, 668 F.3d 1244, 1255-56 (11th Cir. 2012) (quoting Lee v. Ferraro, 284 F.3d 1188, 1199 (11th Cir. 2002).

The record evidence amply supports the determination that Watts was acting within the scope of his discretionary authority as jail administrator at the time of the wrongful acts at issue, and Steele offers no evidence or argument to the contrary. Accordingly, the burden now shifts to Steele to show that Watts violated a constitutional right that was clearly established at the time the complaint arose. However, as discussed below, Steele fails to establish an Eighth Amendment violation.

**B.     Eighth Amendment Claims.**

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting deliberate indifference to a substantial risk of serious harm to an

inmate. Farmer v. Brennan, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). In DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989), the Supreme Court summarized a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- e.g., food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

DeShaney, 489 U.S. at 199-200 (citations omitted).

In order to prevail on an Eighth Amendment claim, an inmate must make both an objective and a subjective showing. In Sims v. Mashburn, 25 F.3d 980 (11th Cir. 1994), the court delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

25 F.3d at 983. To prevail on constitutional claims like the ones asserted by Plaintiff, he must prove that there was "a substantial risk of serious harm," that Defendant was subjectively deliberately indifferent to that risk, and causation. Hale, 50 F.3d at 1582; see also Farmer, 511 U.S. at 832-34.

The objective component of an Eighth Amendment claim inquires whether the alleged wrongdoing amounted to the infliction of "unnecessary pain or suffering upon the prisoner." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993). This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'" Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . , but must be balanced against competing penological goals." LaMarca, 995 F.2d at 1535 (quoting Estelle v. Gamble, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (internal quotation marks omitted)).

The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." Sims, 25 F.3d at 983-84 (citing Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)). This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" Farmer, 511 U.S. at 834 (quotation and citation omitted). In prison conditions cases, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety. Id. (citations omitted). In defining "deliberate indifference," the Supreme Court in Farmer stated:

> We hold ... that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of

confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837. The Court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment. Id. at 839-40. Under this test, there is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not . . . ." Farmer, 511 U.S. at 838. It is not enough that an inmate proves that the defendant should have known of the risk, but did not, as actual knowledge is the key. See, e.g., Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996).

Having set forth the general legal principles relevant to Steele's claims, the undersigned now turns to the application of those legal principles to the facts before the Court.

## 1.    Denial of medical care.

In order to demonstrate a denial of medical care in violation of the Eighth Amendment, Steele must prove the components described above. Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) ("The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs."). To meet the objective element, Steele first must demonstrate the

existence of an "objectively serious medical need." <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" <u>Id</u>. (quoting <u>Hill v. Dekalb Reg'l Youth Det. Ctr</u>., 40 F.3d 1176, 1187 (11th Cir. 1994)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." <u>Id</u>. (internal quotation marks and citation omitted).

There can be no doubt that HIV constitutes a serious medical condition or illness; however, Steele posits no facts indicating that he demonstrated the existence of a serious medical *need* at the time the complaint arose. Notably, the complaint is void of allegations that Steele suffered from any HIV symptoms (fever, headaches, muscle aches, rash, sore throat, etc.) that required treatment, medication, or examination during the limited days he was incarcerated at Marengo Jail; furthermore, Steele proffers no details or explanation of harm, injury, or worsening of his condition due to his failure to receive medical care during the two weeks he was incarcerated at the Marengo Jail. Instead, Steele's claim is supported solely by allegations that the Marengo Jail has "no medical staff including doctors" and that the jail is incapable of providing the proper care necessary for a HIV patient. (Doc. 7 at 4). See <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1429 (5th Cir. 1996) ("[C]onclusory allegations, speculation, and unsubstantiated assertions

are inadequate to satisfy the nonmovant's burden."); Bennett v. Parker, 898 F.2d 1530, 1533-34 (11th Cir. 1990) (A "conclusory allegation" cannot defeat summary judgment.).  Consequently, Steele's failure to identify any specific medical need that went untreated constitutes a failure to establish an Eighth Amendment violation.

Assuming *arguendo*, for purposes of this motion, that Steele had demonstrated an "objectively serious medical need," Steele has failed to establish that Watts was deliberated indifferent to the need.  Sims, 25 F.3d at 983-84 (Deliberate indifference entails acting "with a sufficiently culpable state of mind.").  Steele bears the burden of showing that Watts disregarded an excessive risk to Steele's health.  Farrow, 320 F.3d at 1245; Farmer, 511 U.S. at 835 ("Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'") (quoting Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)).  The record, however, is void of any such evidence.

As discussed above, Steele presents no evidence showing or facts indicating that Watts, or any officer, knew Steele was in need of medical treatment and denied him care.  Contrarily, Watts presents evidence that indicates Steele clearly understood the method by which medical care was obtained at the jail and that Watts had no knowledge that Steele was in need of medical attention.

The record shows that, upon being booked in to Marengo Jail, Steele was screened and questioned regarding possible medical issues. (Doc. 27-3 at 2). The intake screening form documents that Steele has health problems, but fails to disclose a specific medical condition, and Steele was cleared to be housed in general population. (Id.). Additionally, Steele was aware of how to request care in the jail as he was provided a document titled "Consent to Treatment," which explains the medical and grievance polices at Marengo Jail (Doc. 25-4 at 2), and he had been arrested and booked into Marengo Jail at least eight previous times.[4] (Docs. 25-3, 27 at 3). Despite this knowledge, the record lacks evidence that Steele ever submitted a request for medical care or a grievance form that he had been denied medical care.[5] Watts avers, and Steele does not dispute, that

---

[4]    The record evidences Steele was booked into Marengo Jail on December 28, 2011 through January 7, 2012, July 19-21, 2012, September 17-18 2012, October 7-8, 2012, and in 1999, 2001, 2003, and 2005. (Doc. 25-3 at 3-6; Doc. 27 at 3).

[5]    Steele makes the blanket statement in a single pleading that he "followed the sick-call procedures but was denied care." (Doc. 5 at 1). However, the certified records from Marengo Jail and Defendant's affidavit indicate no medical request was ever submitted by Steele. (Docs. 25, 27). Furthermore, the Court ordered Defendant to verify whether the Marengo Jail was "in possession of any records pertaining to medical care of Plaintiff" (Doc. 48), and Defendant Watts responded that he nor any employee at the Marengo Jail was in "possession any records pertaining to the Plaintiff's medical care that were not produced as exhibits to Defendant's Special Report brief," this would include a request for medical attention or a grievance that a medical need had not been met. (Doc. 49 at 1). And while the Court looks at the facts in the lights most favorable to Plaintiff, see Harris v. Cowetta Cnty., 433 F.3d 807, 811 (11th Cir. 2005), Steele fails to reveal necessary details about requesting medical care (for instance, when a request was submitted or even to specify the need for which he sought medical attention) that could overcome the record evidence.

    In fact, the only allegation made regarding the submission of a request for medical care is found in Steele's response to the motion for summary judgment. In the pleading, Steele claims, in attempt to get treatment for gangrene on his right foot, he placed a sick call slip "in the window," where Officer Smith and three other

Plaintiff has never made any verbal or written complaint to [him] regarding the allegations of [Steele's] Complaint or Amended Complaint. [He has] not received a grievance from the Plaintiff regarding anything complained of in [Steele's] Complaint, either directly or through the appeal process. . . . Inmates at the Marengo County Detention Center interact with jail staff multiple times a day. Thus, Plaintiff had multiple opportunities to contact members of jail staff and file an Inmate Grievance Form. . . .

It is the policy of the Marengo County Sheriff's Office to allow inmates incarcerated in the Marengo county Detention Center to request health care services at any time. Inmates may make a verbal request for any type of emergency services to any member of the Detention Center staff at any time. In any situation that might be an emergency, jail staff call 911. Jail staff are also instructed to transport an inmate in need of emergency medical care to the emergency room. An inmate in need of any type of service or attention that is not an emergency may complete a Request Slip for Medical Care and forward it to any member of the Detention Center staff. Requests for medical treatment are accepted by members of the Detention Center staff at any time.

Plaintiff has not made a request for medical care to me and I have not received a Request Slip for Medical care from the Plaintiff. To my knowledge, Plaintiff does receive medical care as he brings prescription medication with him when he is booked into the Detention Center.

(Doc. 27-1 at 4, 6-7). Thereby, the record confirms Watts has never personally denied a medical request to Steele and, in fact, affirmed he believed Steele possessed his personal HIV medications during his incarceration at the Marengo Jail.[6] (Doc. 27-1 at 8). Moreover, Steele's

---

officers were present. (Doc. 58 at 5). Notably, this incident has been the subject of a previously filed lawsuit, see Steele v. Langley, et al., 2:06-CV-486-MEF-[WO]. This medical need, thereby, is completely unrelated to the complaint at hand, which relates to violations occurring between June 5 and June 18 of 2013. Therefore, Steele's responses relating to such are irrelevant to this report and recommendation.

[6] Correspondingly, Steele asserts that on June 17, 2013, he met with Defendant Watts and was informed that he would be transferred the next day to

response fails to dispute Watts' assertions, except to argue that Watts, and the entire staff of Marengo Jail, "don't understand nothing about HIV positive inmate[s]."  (Doc. 58 at 4); see also Fed. R. Civ. P. 56(c).  Steele stresses that intake medical screenings should be done by actual nurses or physicians, as "Marengo County Jail staff workers don't have common knowledge or experience, or skill" required to properly perform such examinations.  (Doc. 58 at 4).  While Steele's assertions may be entirely correct, they do not rise to the level of deliberate indifference and cannot overcome summary judgment.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991) (Once movant succeeds in demonstrating the absence of material issues of fact, the burden is on nonmovant to establish, with evidence beyond the pleadings, that a genuine issue exists.)

Thus, the record is bereft of any details suggesting that Watts had knowledge of a serious medical need and disregarded the risk.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116-17 (11th Cir. 1993) (On issues where the nonmovant bears the burden at trial, he must put "show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party" or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.").

---

Limestone Correctional Facility, which possesses a "special housing unit for HIV positive inmates."  (Doc. 58 at 5).  At this meeting in Watts' office, Correctional Officer Smith was told to locate all of "Steele's property and medication" in preparation for the transfer.  (Id.).

As such, the lack of pleaded facts and unsubstantiated allegations demonstrates that there is no genuine issue of material fact related to this issue and that Defendant Watts is entitled to judgment as a matter of law on this claim.

## C.     Conditions of Confinement.

The Eighth Amendment prohibits inhumane prisons, but does not require comfortable ones.  Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994).  Prison conditions constitute cruel and unusual punishment only when they result in the "unquestioned and serious deprivation of basic human needs." *Rhodes*, 452 U.S. at 347.  "[B]asic human necessities include food, clothing, shelter, sanitation, medical care, and personal safety." *Harris v. Thigpen*, 941 F.2d 1495, 1511 (11th Cir. 1991) (cited in *Collins v. Homestead Corr. Inst.,* 452 F. App'x 848, 850-851 (11th Cir. 2011)).  "[T]o make out a claim for an unconstitutional condition of confinement, 'extreme deprivations' are required . . . ." *Thomas v. Bryant* 614 F.3d 1288, 1304, 1306-07 (11th Cir. 2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L.Ed.2d 156 (1992)).  This requires establishing the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety."  Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004).

To demonstrate a violation of an Eighth Amendment right in a section 1983 prison conditions action, a plaintiff must prove three elements: (1) "a

condition of confinement that inflicted unnecessary pain or suffering"; (2) "the defendant's deliberate indifference to that condition;" and (3) "causation." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993), *cert. denied*, 510 U.S. 1164, 114 S. Ct. 1189, 127 L. Ed. 2d 539 (1994) (internal quotation marks and citations omitted). "The wrong in Eighth Amendment cases is the deliberate indifference to a constitutionally infirm condition; that wrong must, in turn, have been the proximate cause of the plaintiffs' injuries." 995 F.2d at 1538-39.

Steele claims his cell was without running water and a working toilet. (See Doc. 5 at 1; Doc. 7 at 5). It is unclear from the pleadings, however, whether or not these conditions lasted one day or for the twelve days he was held at Marengo Jail. Nonetheless, taking the allegations as true, for the entire duration of his confinement, such claims do not amount to a constitutional deprivation, as he fails to plead any facts suggesting he was ever denied water to drink or access to sanitary facilities (which would leave him subjected to uncleanliness, exposure to human waste, or unhygienic means of disposing of his bodily wastes).

The Eleventh Circuit has long recognized the right "not to be confined . . . in conditions lacking basic sanitation." Chandler v. Baird, 926 F.2d 1057, 1065-66 (11th Cir. 1991). Additionally,

> every sister circuit (except the Federal Circuit) has recognized that the deprivation of basic sanitary conditions can constitute an Eighth Amendment violation. See Budd v. Motley, 711 F.3d 840, 843 (7th Cir. 2013) (per curiam) ("[A]llegations of

unhygienic conditions, when combined with the jail's failure to provide detainees with a way to clean for themselves with running water or other supplies, state a claim for relief."); DeSpain v. Uphoff, 264 F.3d 965, 974 (10th Cir. 2001) ("Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in Farmer and the more general standards of dignity embodied in the Eighth Amendment"); Young v. Quinlan, 960 F.2d 351, 365 (3d Cir. 1992) ("It would be an abomination of the Constitution to force a prisoner to live in his own excrement for four days. . . ."), superseded by statute on other grounds as recognized by Nyhuis v. Reno, 204 F.3d 65, 71 n. 7 (3d Cir. 2000); Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989) (noting that "inmates are entitled to reasonably adequate sanitation" and finding Eighth Amendment violation where cell was "covered with . . . human waste"); Inmates of Occoquan v. Barry, 844 F.2d 828, 836, 269 U.S. App. D.C. 210 (D.C. Cir. 1988) (recognizing "sanitation" as a "basic need" for prisoners protected by the Eighth Amendment); Parrish v. Johnson, 800 F.2d 600, 609 (6th Cir. 1986) ("[T]he Eighth Amendment protects prisoners from being . . . denied the basic elements of hygiene.") (quotation omitted); Green v. McKaskle, 788 F.2d 1116, 1126 (5th Cir. 1986) ("[A] state must furnish its prisoners with reasonably adequate . . . sanitation . . . to satisfy [the Eighth Amendment's] requirements.") (quotation and alteration omitted); Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985) (noting that the failure to provide "minimally sanitary" conditions "amounts to a violation of the Eighth Amendment"); Hawkins v. Hall, 644 F.2d 914, 918 (1st Cir. 1981) (explaining that prison conditions "must be sanitary") (quotation omitted); Hite v. Leeke, 564 F.2d 670, 672 (4th Cir. 1977) (recognizing that "the denial of decent and basically sanitary living conditions and the deprivation of basic elements of hygiene" can violate the Eighth Amendment) (quotation omitted); LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir. 1972) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted.").

Epps v. Hein, 2016 U.S. Dist. LEXIS 73906, *14-15 (S.D. Ga. June 6, 2016)

(quoting Brooks v. Warden, 800 F.3d 1295, 1303-04 (11th Cir. 2015).

    With that said, however, courts have repeatedly refused to find Eighth

Amendment violations based on short term unavailability to functioning plumbing within one's cell. See, e.g., Alfred v. Bryant, 378 F. App'x 977, 980 (11th Cir. 2010) (affirming dismissal of Eighth Amendment claim based on confinement in cell for eighteen days without properly functioning toilet); Williams v. Delo, 49 F.3d 442, 445-46 (8th Cir. 1995) (finding that the plaintiff's constitutional rights were not violated during his four-day stay in a strip cell where the water was turned off because, among other things, he was given three meals a day with milk, and noting there were no allegations of injury); Wilson v. Timko, 972 F.2d 1348 [published in full-text format at 1992 U.S. App. LEXIS 18851], 1992 WL 185446, at *3 (9th Cir. 1992) (unpublished) (finding that the turning off of water which kept plaintiff from flushing his toilet or taking a shower for two and a half days did not result in the denial of basic needs as he was provided drinking water, among other things, every few hours); Toney v. Fuqua, CA 07-00079-CG-B, 2009 U.S. Dist. LEXIS 43036, 2009 WL 1451645, at *3 (S.D. Ala. May 20, 2009) (unpublished) (finding that turning off the water to plaintiff's cell for four days, among other things, did not violated the minimal civilized measure of life's necessities); Gross v. White, 2008 U.S. Dist. LEXIS 65432, 2008 WL 2795805, at *9 (M.D. Fla. July 18, 2008) (unpublished) (finding the complaint failed to state a claim based on plaintiff's allegations that, among other things, the water was turned off to his isolation cell for thirty-six hours, which was found to be a minor discomfort in light of the absence of

allegations that the prisoner was not deprived of food or liquids), aff'd, 340 F. App'x 527 (11th Cir. 2009).

The pleadings are completely void of facts suggesting that Steele was deprived of water to drink or a bathroom to use, despite the inoperative plumbing in his cell.  Contrarily, the undisputed record reflects that although Steele's cell may have lacked a working toilet and running water, he had unrestricted access to the communal dayroom (located directly off his cell), its bathroom facilities, and outdoor recreation throughout the day (from approximately 9:00 a.m. until 6:00 p.m.).  (Doc. 27-1 at 5).  Additionally, Steele was provided three hot meals a day, which included liquids to drink, and a daily shower.  (Id. at 5-6).  Thus, Steele's alleged conditions do not rise to the level of an Eighth Amendment violation.

Furthermore, Steele has not alleged that the deprivations caused him any injury.  Thus, the allegations reflect only that Plaintiff was inconvenienced by not having immediate access to running water or a toilet in his cell (and may have had some discomfort - although none is specifically alleged).  Thus, the claims do not permit the Court to draw a conclusion that Steele was deprived "of the minimal civilized measure to life's necessities" by the lack of water in his cell or defective plumbing.  Farmer, 511 U.S. at 832 (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  Plaintiff's allegations are insufficient to show that he was deprived of water or liquids to the point of sustaining an injury.  LaMarca v. Turner, 995 F.2d 1526, 1539-

40 (11th Cir. 1993) (requiring that injury be connected to a defendant's deliberate indifference to the constitutionally infirm condition). Similarly, his allegations do not have the heft to show that he was deprived of sanitation to the point of being injured. Id. As pleaded, Steele's claims do not have the plausibility necessary for the Court to find that the lack of water and toilet in his cell caused a deprivation of a single human need. Rhodes, 452 U.S. at 349 ("Indeed routine discomfort is part of the penalty prisoners may pay for their offenses, and prisoners cannot expect the 'amenities, conveniences, and services of a good hotel.'"). The Court thus concludes that Steele's allegations do not satisfy the objective component of establishing a conditions of confinement claim, and consequently Steele has failed to state an Eighth Amendment claim.

Assuming *arguendo* that the lack of water and working toilet in his cell were considered objectively serious, the evidence is void that the named defendant was subjectively aware Steele faced a "substantial risk of serious harm" and disregarded that risk by failing to take reasonable measures to abate it. See Farmer, 511 U.S. at 828, 834, 837. To the contrary, the record reveals, and Steele has not disputed, that he never made a verbal or written complaint to Watts regarding the conditions of his cell. (Doc. 27-1 at 4). Also, there are no filed grievances on record reporting the conditions of his cell. (Id.). Thus, Steele has failed to carry his burden of showing that Watts was subjectively aware that his cell lacked running water or a functioning toilet,

much less that Steele faced a "substantial risk of serious harm" and disregarded that risk.[7] As such, Steele fails to create a genuine issue of material fact on the question of whether or not Defendant Watts violated his right to constitutional conditions of confinement, and summary judgment is due to be granted to Defendant. Cf., Peterson v. Morin, 2:11-cv-176, 2012 U.S. Dist. LEXIS 67771, *30-32 (S.D. Tex. Apr. 5, 2012) (Defendants' summary judgment was denied where the defendants were made aware of the unsanitary conditions but failed to respond to grievances or provide necessary supplies to correct problems.).

## IV. Conclusion.

Based on the foregoing, it is recommended that Defendant Watts' motion for summary judgment be **granted** and that Plaintiff Steele's action against Defendant Watts be **dismissed** with prejudice.[8]

---

[7]     Although not pleaded, to the extent that Steele is suing Watts for violations based on the fact that Watts is the Marengo County Detention Center Administrator and responsible for the day-to-day management of the facility, his claims fail. Such a claim is rooted in the theory of *respondeat superior*, that is, that Watts, as a supervisor, is responsible for the prison staff's actions. In order to state a claim upon which relief can be granted in a § 1983 action, a plaintiff must establish a causal connection between the defendant's "actions, orders, customs, policies, or breaches of statutory duty and the alleged deprivation of his constitutional rights." Frankum v. Chapman, 2009 WL 1118875, *3 (S.D. Ala. 2009) (citations omitted). As discussed above, Steele has not connected any claim to the actions or inactions of Watts, nor has Steele alleged any policy or custom at Marengo Jail which subjects inmates to unconstitutional conditions. Therefore, liability for an alleged constitutional violation cannot be established on the basis of a theory of *respondeat superior*, see Edwards v. Alabama Dep't of Corrs., 81 F. Supp. 2d 1242, 1255 (M.D. Ala. 2000) ("A theory of *respondeat superior* is not sufficient to support [a] § 1983 claim. . . ."), and Steele has failed to state a claim upon which relief may be granted.

[8]     In the alternative to dismissal of this action for the reasons stated above, this action is due to be dismissed pursuant to 42 U.S.C. § 1997e(e). Section 1997e(e)

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal

---

states that "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

Steele seeks monetary damages in the amount of $700,000.00. (Doc. 7 at 7). However, pursuant to § 1997e(e), Steele may not recover compensatory or punitive damages without a showing of actual injury, and his complaint fails to allege any suffered injury (see Docs. 1, 5, 7); thus, success of Steele's claims is relegated to the possibility of recovering nominal damages only. See Carey v. Piphus, 435 U.S. 247, 266-67, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978) (Holding if plaintiffs were entitled to nominal damages for the violation, the damages should not exceed one dollar); Kyle v. Patterson, 196 F.3d 695, 697 (7th Cir. 1999) ("[N]ominal damages, of which $1 is the norm, are an appropriate means of vindicating rights whose deprivation has not caused actual, provable injury.").

Therefore, Steele's action would be subject to dismissal pursuant to 42 U.S.C. § 1997e(e), and only Steele's claim for nominal damages, typically in the amount of one dollar, would proceed if he could produce evidence of a constitutional violation.

for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this the 16th day of August 2016.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**